FILED
2022 May-23  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ROBERT BECKWITH, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:20-cv-00407-LCB** |
| | ) | |
| **CALIBER HOME LOANS, INC.,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court is the defendants' Renewed Motion for Summary Judgment. (Doc. 46). Plaintiff Robert Beckwith, Jr., claims that the defendants breached his mortgage agreement's terms and failed to comply with RESPA requirements. The parties have fully briefed the motion and it is ripe for review. For the reasons that follow, the Court **GRANTS** Defendants' motion for summary judgment.

## SUMMARY OF THE FACTS

This case arises from a mortgage. More specifically, this is the latest in a long line of legal actions to avoid a foreclosure. The parties nominally dispute most of the relevant facts to the claims. Basic facts about the mortgage, however, are undisputed and straightforward. On November 14, 2002, Beckwith executed a Loan Repayment and Security Agreement and a mortgage (collectively, the "agreement") secured by the real property located at 775 Ebony Road, Tuscumbia, Alabama

35674.[1] Household Finance Corporation of Alabama ("HFC") was the loan's original lender and servicer.[2] HFC assigned the loan to Defendant U.S. Bank effective October 1, 2014.[3] In turn, Defendant Caliber Home Loans, Inc. began servicing the loan effective October 31, 2014.[4]

While HFC still held the loan, in September 2008, Beckwith filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama.[5] On February 11, 2014, that court granted Beckwith a discharge from bankruptcy.[6] A year later, on March 3, 2015, Beckwith sued HFC, Caliber, and U.S. Bank in the Circuit Court of Colbert County, Alabama.[7] The defendants removed the case to this Court.[8] After extensive motion practice, Beckwith reached a settlement with HFC and dismissed his claims against it with prejudice.[9] Shortly after that, Beckwith dismissed his claims against Caliber and U.S. Bank without prejudice.[10]

The parties dispute almost everything after Beckwith's bankruptcy, aside from *Beckwith I*'s procedural facts. Relevant to the claims here are payments

---

[1] (Docs. 48-2; 48-3).
[2] (Doc. 48-25 at 54, 60).
[3] (Docs. 48-1 at ¶ 7; Doc. 48-4; Doc. 48-5).
[4] (Docs. 48-1 at ¶ 8; Doc. 48-6).
[5] *In re Beckwith*, No. 08-83005-JAC13 (N.D. Ala. Bankr.).
[6] *Id.* at (Doc. 60).
[7] Case No. CV-2015-900066.
[8] *Beckwith v. Caliber Home Loans, Inc.*, 3:15-cv-00581 (N.D. Ala. 2015) ("*Beckwith I*").
[9] *Id.* at (Doc. 43).
[10] *Id.* at (Doc. 51).

Beckwith made on the mortgage after his discharge from bankruptcy. Beckwith contends that after his discharge from bankruptcy he made various monthly payments.[11] The defendants assert—and present evidence showing—that Beckwith did not make any payments from the time they took the mortgage until 2017, when Beckwith attempted to make three payments.[12] According to the defendants, however, because Beckwith made those payments after he entered default, and the payments did not cure the default, they returned the payments.[13]

That brings us to the crux of this case. The defendants assert—and provide evidence showing—that on July 1, 2019, they sent Beckwith notice of his default and intent to accelerate the mortgage.[14] One month later, on August 4, 2019, the defendants allegedly sent a notice of acceleration to Beckwith.[15] In January 2020, the defendants then allegedly publicized and gave notice of the foreclosure sale.[16] The sale took place on February 21, 2020, and U.S. Bank bought the property.[17]

The day of the foreclosure sale, Beckwith filed this case in the Circuit Court of Colbert County, Alabama.[18] Beckwith's original complaint brought fifteen causes

---

[11] (Doc. 60 at 9-11). As explained below, however, Beckwith would have made most of those alleged payments before the defendants in this case became involved in the mortgage.
[12] (Doc. 47 at 7).
[13] *Id.*
[14] (Docs. 48-1 at ¶ 19; 48-15).
[15] (Docs. 48-1 at ¶ 20; 48-16; 48-25 at 120-21).
[16] (Docs. 48-1 at ¶ 20; 48-16; 48-25 at 123; 48-26).
[17] (Docs. 48-1 at ¶ 23; 48-19).
[18] Case No. 20-CV-2020-900041.00

of action against the defendants under essentially identical factual allegations to his complaints in *Beckwith I*.[19] The defendants removed the case to this Court on March 25, 2020.[20] After preliminary motion practice and an amended complaint, the defendants filed a motion to dismiss on September 29, 2020.[21] The Court granted in part and denied in part the defendants' motion, leaving only Beckwith's claims of breach of contract and RESPA violations.[22] Beckwith filed a second amended complaint limited to those two claims,[23] and the defendants renewed their motion for summary judgment in turn.[24]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the

---

[19] (Doc. 1-1).
[20] (Doc. 1).
[21] (Doc. 22).
[22] (Doc. 40).
[23] (Doc. 45).
[24] (Doc. 46).

moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c), a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party

5

opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## DISCUSSION

The issues before the Court are relatively simple. The defendants raise three arguments in their motion. First, the defendants argue that claim preclusion bars Beckwith's breach of contract claim, at least in part. Second, the defendants assert that Beckwith cannot maintain a breach of contract claim because they performed under their obligations under the agreement and Beckwith did not. Third, the defendants aver that they complied with RESPA's timing requirements and Beckwith sustained no RESPA-related damages.

Before proceeding to the arguments' merits, the Court notes two general issues in the briefing—both on Beckwith's side. First, in support of his response, Beckwith attached an affidavit of sworn testimony. (Doc. 60-1). But upon review, it becomes clear that the affidavit is an almost word-for-word replica of the second amended complaint. *Compare id. with* (Doc. 45). Most importantly, the affidavit is a string of legal conclusions and offers no proof or factual assertions. That is, the affidavit in no way "set[s] out facts that would be admissible in evidence" because it is a series of legal conclusions. Fed. R. Civ. P. 56(c)(1)(4); *see also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). The affidavit's inadequacy ultimately becomes irrelevant for reasons made clear below.

Second, Beckwith begins his response with a footnote that attempts to incorporate everything filed in this case into his response. He says, in relevant part,

that he "is relying in his response on some of the submissions previously filed by the Defendants and previously [*sic*] filings of his own in his previous responses. Rather than refile that material, he relies on and incorporates what has been filed already with the Court." (Doc. 60 at 2 n.1). He goes on to list documents he purportedly incorporates, which in total amount to the entire docket. *Id.* The Court does not have "an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006). Rather, it is the party's responsibility to cite with specificity to the evidence in the record to show there is a factual dispute. Fed. R. Civ. P. 56(c)(1).

## I.   Claim preclusion partly bars Beckwith's breach of contract action and defendants performed under the agreement's terms.

Beckwith's complaint raises four potential breach of contract claims: (1) the defendants did not properly apply payments to the mortgage's balance; (2) the defendants did not give Beckwith required notices under the agreement; (3) the defendants did not engage in good faith attempts to avoid foreclosure; and (4) the defendants charged improper fees under the agreement. (Doc. 45 at 10-12). On summary judgment, the defendants assert Beckwith cannot maintain a breach of contract claim because claim preclusion, at least in part, bars the claims. Additionally, the defendants aver they performed under the agreement while Beckwith did not. The Court agrees on both points.

**A.     Claim preclusion bars Beckwith's breach of contract claims in part.**

The defendants' claim preclusion[25] argument centers on the factual basis for Beckwith's breach of contract claims. Specifically, the defendants point out that some of the alleged payments purportedly took place before the defendants became involved in the loan, so Beckwith could only have made those payments to HFC. (Doc. 47 at 11-14). And Beckwith dismissed all claims against HFC with prejudice in *Beckwith I*. 3:15-cv-00581-RDP at (Doc. 43). The defendants further point out that the claims were factually the same. (Doc. 33 at 5-6). Accordingly, the argument is that claim preclusion bars Beckwith's breach of contract claims to the extent that they are based on payments made to HFC because Beckwith dismissed all claims against HFC with prejudice in *Beckwith I*. Beckwith does not address this in his brief's argument section. But in the introduction section, Beckwith cites to U.S. Bank and Caliber's dismissal without prejudice in *Beckwith I*. (Doc. 60 at 4).

Beckwith's problem becomes apparent in the factual allegations section of his complaint. The complaint cites payments made in: March 2014, April 2014, May

---

[25] The parties use the term "*res judicata*" in the briefs. However, courts have used *res judicata* interchangeably—and confusingly—to refer to two distinct but related doctrines: claim preclusion and issue preclusion. *See, e.g., Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). The argument here is about claim preclusion. The modern trend in discussing preclusion is towards limiting the use of the term "*res judicata*" to claim preclusion. 18 *Moore's Federal Practice*, § 131.10[1][b] (Matthew Bender 3d Ed.). But to be as clear as possible, the Court will forego usage of the vague and easily misunderstood "*res judicata*", and instead exclusively use the unambiguous "claim preclusion" to discuss this issue.

2014, June 2014, (Doc. 45 at ¶ 15); July 2014, *id* at ¶ 16; July to November 2014, *id.* at ¶ 17; February to April 2014, *id.* at ¶ 17; December 2014 to January 2015, *id.* at ¶ 17; February 2014, March 2014, April 2014, May 2014, June 2015, and July 2016. *Id.* at ¶ 18. Beckwith cites 14 payments total. But, most importantly, the defendants were not involved in the mortgage until October 2014. (Docs. 48-1 at ¶¶ 7-8; Doc. 48-4; Doc. 48-5; Doc. 48-6). Of the 14 alleged payments, Beckwith purportedly made just 5 after the defendants took over from HFC. Beckwith necessarily would have made the alleged payments before October 2014 to HFC.

To successfully invoke claim preclusion in the Eleventh Circuit, the party must satisfy four elements:

> (1) the prior decision must have been rendered by a court of competent jurisdiction;
> (2) there must have been a final judgment on the merits;
> (3) both cases must involve the same parties or their privies; and
> (4) both cases must involve the same causes of action.

*Kaiser Aerospace & Electronics Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1296 (11th Cir. 2001) (citing *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir. 1992); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990)).

The parties do not dispute that this Court, in *Beckwith I*, was a court of competent jurisdiction. The first issue the Court will consider is whether a voluntary dismissal with prejudice under Rule 41(a)(1) is a final judgment on the merits. In the

Eleventh Circuit, "[t]he law is clear that if a suit has been dismissed with prejudice pursuant to a settlement, this is a final judgment that will ground a procedural bar." *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir. 1991) (citing *Lawlor v. Natl. Screen Serv. Corp.*, 349 U.S. 322, 327 (1955); *United States v. Parker*, 120 U.S. 89, 95 (1887); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501-02 (11th Cir. 1990)). That is a complicated way of saying that a joint stipulation of dismissal with prejudice is a final judgment on the merits under claim preclusion. So, Beckwith's dismissal of all claims against HFC with prejudice in *Beckwith I* is a final judgment on the merits.

Second, the Court will consider whether the defendants here—Caliber and U.S. Bank—are in privity with HFC. When considering claim preclusion, generally the parties must be the same in the two cases. But there are six recognized exceptions:

> (1) the nonparty agreed to be bound by the litigation of others;
> (2) a substantive legal relationship existed between the person to be bound and a party to the judgment;
> (3) the nonparty was adequately represented by someone who was a party to the suit;
> (4) the nonparty assumed control over the litigation in which the judgment was issued;
> (5) a party attempted to relitigate issues through a proxy; or
> (6) a statutory scheme foreclosed successive litigation by nonlitigants.

*Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing *Taylor v. Sturgell*, 128 S. Ct. 2161, 2172-73 (2008)). In this case, the second criterion

creates privity. Parties that assume a mortgage and subsequent servicers on a mortgage both have a substantive legal relationship sufficient for privity under claim preclusion. *See Shore v. Wilmington Tr., N.A.*, 2017 WL 1494509, *4-5 (S.D. Fla. Apr. 20, 2017). Accordingly, as the mortgage assignee and subsequent servicer, the defendants in this case are in privity with HFC for claim preclusion.

Third, the Court must consider whether the causes of action in the two cases are the same. Most obviously, Beckwith brings the exact same cause of action in both cases. *Compare Beckwith I* (Doc. 33 at 11-13) *with* (Doc. 45 at 10-12). Further, the factual allegations are equivalent between the two cases. And "if a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same 'claim' or 'cause of action' for purposes of [claim preclusion]." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999) (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)). Put simply, the causes of action and the factual allegations supporting them are the same between the two cases here. Accordingly, the same cause of action criterion is satisfied.

The upshot is that all four criteria for claim preclusion are satisfied in this case. A court of competent jurisdiction rendered the previous judgment, the voluntary dismissal was a final judgement on the merits, the defendants in this case are in privity with HFC, and the causes of action are the same. Therefore, to the

extent that Beckwith's breach of contract claims are based on activity with HFC, claim preclusion bars them. That is, the 9 alleged payments made before the defendants became involved with the mortgage that Beckwith cites cannot support his breach of contract claims in this case.

**B.    Beckwith cannot maintain his breach of contract claims because the evidence shows the defendants performed under the agreement's terms.**

Beckwith's various breach of contract claims are, in essence, contentions that the defendants did not perform under the agreement's terms. In his complaint, Beckwith sums up his claims by saying that "US Bank and Caliber failed and refused to engage in a legitimate and good faith mortgage foreclosure avoidance workout, failed and refused to accept the proper payments sent by Plaintiff, have inflated the amount due, improperly charged fees, and have foreclosed on Plaintiff without any basis to do so." (Doc. 45 at 10). Beckwith also claims that the defendants failed to provide notices required under the agreement. *Id.*

In general, contract law is state law. *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 474 (1989) ("[T]he interpretation of private contracts is ordinarily a question of state law".). Accordingly, the Court will analyze Beckwith's claims through the lens of Alabama state contract law. In Alabama, the elements for breach of contract are:

(1) a valid contract binding the parties;
(2) the plaintiff's performance under the contract;

(3) the defendant's nonperformance; and

(4) resulting damages.

*Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). As explained above, the issues before the court center on the third criterion: whether the defendants performed under the agreement's terms.

### 1.   *Application of Payments*

The Court begins with Beckwith's best-developed claim. Beckwith asserts that the defendants violated the agreement by failing to properly apply his payments against the loan's balance. The mortgage provides that:

> Unless applicable law or the Note provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied; first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

(Doc. 48-3 at ¶ 3). Beckwith alleges that he made payments, that the defendants deposited some of those payments, but the defendants did not apply those payments against his loan. (Doc. 45 at ¶ 34). Additionally, as best the Court can tell, Beckwith argues that the defendants breached the agreement by returning some payments to him instead of applying them against his loan balance. *Id.*

But Beckwith has produced no evidence that he made any of the alleged payments. Put simply, a party must cite evidence supporting its factual assertions at summary judgment. "A nonmoving party seeking to establish that there is a dispute

of fact must set forth specific facts showing that there is a genuine issue for trial. The nonmoving party may not rest upon the mere allegations or denials of his pleading." *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson*, 477 U.S. at 248 (1986)) (cleaned up). Beckwith relies exclusively on the mere allegations in his pleadings. He does not cite a single piece of evidence throughout his argument in his response. Rather, he copies—largely word-for-word—his complaint's factual allegations without proving their veracity.

On the other hand, the defendants presented evidence showing that, since taking over the mortgage, Beckwith made only three payments, each in 2017, which they returned to Beckwith because the payments did not cure his default. (Docs. 47 at 15; 48-1 at ¶ 18). Most significantly, Beckwith admitted at his deposition that since October 2014 he has made just three payments, each in 2017, and the defendants returned them because they did not cure his default. (Doc. 48-25 at 115-17, 132-33, 158-59, 167-68). Thus, no factual dispute exists about the application of payments. The only evidence before the Court—the evidence provided by the defendants—shows that Beckwith failed to make payments from October 2014 until 2017, and the defendants returned the three 2017 payments because they failed to cure his default. Because there is no factual dispute, and the evidence shows that the defendants did not misapply payments (because Beckwith did not *make any payments*), the defendants are due judgment as a matter of law on this claim.

2.    *Notice Requirements*

Beckwith claims that the defendants breached the agreement's notice requirements. (Doc. 45 at ¶ 36). The mortgage provides, in relevant part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but prior to acceleration under paragraph 14 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.

(Doc. 48-3 at ¶ 16). The mortgage also mandates how the defendants must give notice to Beckwith:

> Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Borrower's address or any other address Borrower designates by notice to Lender. . . . Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

(Doc. 48-3 at ¶ 12). Beckwith claims that the defendants violated these terms because he never received a notice of default or intent to accelerate the loan. (Doc. 45 at ¶ 36).

16

But at summary judgment, Beckwith again produced no evidence whatever showing that he did not receive notice. Instead, he again recites—almost word-for-word—the mere allegations from his complaint without attempting to prove them. As explained above, that will not do. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289.

Conversely, the defendants presented evidence that they delivered every notice required under the agreement. (Docs. 47 at 15-16; 48-1 at ¶ 19; 48-15; 48-3 at ¶¶ 12, 16; 48-16; 48-18; 48-26). And again, most significantly, Beckwith admitted at his deposition that he received the notices from the defendants. (Doc. 48-25 at 120-23). Thus, again, there is no factual dispute. The only evidence before the Court—the evidence presented by the defendants—shows that the defendants gave proper notice to Beckwith under the agreement's terms. Therefore, because there is no factual dispute, and the evidence shows that the defendants gave Beckwith notice as required by the agreement, the defendants are due judgment as a matter of law on this claim.

### 3.   *Good Faith and Fair Dealing*

Beckwith argues extensively in his response that the defendants violated an implied duty of good faith and fair dealing in a myriad of ways. But he only brought one potential good faith and fair dealing claim in his complaint. There, he provides that "US Bank and Caliber failed and refused to engage in a legitimate and good

faith mortgage foreclosure avoidance workout". (Doc. 45 at ¶ 31). The agreement does not contain a term requiring that the defendants engage in foreclosure avoidance.

Beckwith does not address this in his response. Accordingly, Beckwith has abandoned this claim. In the Eleventh Circuit, "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *see also Ajomale v. Quicken Loans, Inc*., 860 Fed. Appx. 670, 671 (11th Cir. 2021) (affirming the district court's finding of abandonment where the plaintiff did not plainly and prominently address an issue at summary judgment).

Even if the Court considered the merits, Beckwith again produced no evidence whatever that the defendants unreasonably refused to engage in foreclosure avoidance. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289. The defendants, on the other hand, produced voluminous evidence that they repeatedly attempted to work with Beckwith to avoid foreclosure. (Docs. 47 at 5-6; 48-1 at ¶ 10; 48-7; 48-25 at 23-24, 91-92; 48-1 at ¶ 11; 48-8; 48-25 at 94; 48-1 at ¶ 12; 48-9; 48-25 at 94; 48-1 at ¶ 13; 48-10; 48-25 at 99-100; 48-1 at ¶ 14; 48-11; 48-25 at 101; 48-1 at ¶ 15; 48-12; 48-25 at 102; 48-1 at ¶ 16; 48-13; 48-25 at 109-115; 48-1 at ¶ 17). The only evidence before the Court—presented by the defendants—shows that they tried repeatedly to work with Beckwith, but Beckwith would not accept their help.

Beckwith's other purported good faith and fair dealing arguments are barred because he raises them for the first time in his response. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). That is, at summary judgment, a plaintiff is limited to the claims in his complaint. And in this case, the good faith and fair dealing arguments raised by Beckwith at summary judgment are novel and not found in his complaint. Therefore, Beckwith has abandoned his only cognizable good faith and fair dealing claim and is barred from asserting the novel claims, so the defendants are due judgment as a matter of law on these issues.

### 4.   *Improper Fees*

The complaint includes a conclusory allegation that the defendants "improperly charged fees." (Doc. 45 at ¶ 31). The complaint's facts include similarly conclusory statements that the defendants charged certain amounts of improper fees. *Id.* at ¶ 19. But at no point in the complaint does Beckwith contend why or how the alleged fees were improper. In his response, Beckwith, with more conclusory statements, argues that the defendants breached the agreement by charging improper fees. (Doc. 60 at 16, 19). Once again, however, Beckwith cites no evidence whatever

that the defendants did this, dooming his claim. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289. Further, Beckwith again fails to explain why or how the alleged fees were improper. Therefore, Beckwith's claim fails as a matter of law.

### 5.  *Futility of Making Additional Payments*

Beckwith attempts to raise arguments unrelated to the substantive breach of contract claims. First, Beckwith raises an argument that the doctrine of futility excused him from making payments. Specifically, Beckwith asserts that the defendants must affirmatively prove that futility did not excuse him from making payments after the defendants refused and returned payments. (Doc. 60 at 18, 28). Looking at the argument's substance, as best the Court can tell, Beckwith argues that the defendants repudiated the agreement excusing his continued performance.

Again, the Court turns to Alabama contract law. In Alabama, a "repudiation must amount to an unqualified refusal or declaration of inability to substantially perform the duties outlined in the contract." *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d 177, 182-83 (Ala. 2001) (citations omitted). After a party repudiates the contract, "the nonrepudiating party is relieved from performing any further contractual obligations." *Id.* Beckwith's argument fails for two reasons.

First, Beckwith raises this substantive argument for the first time at summary judgment. He did not mention it in his Complaint. As explained above, at summary judgment a party is limited to the substantive claims and arguments in their

pleadings. *See Gilmour*, 382 F.3d at 1315. Thus, this novel argument is improper here. Second, even if Beckwith could raise the argument, the burden is Beckwith's to establish. That is, at summary judgment, a party bears the burden of affirmatively showing that evidence supports its claims or substantive arguments. Beckwith's argument that the onus is on the defendants to show that his previously unmade substantive argument is not true is untenable. In essence, Beckwith argues that the defendants bore the burden of first showing that he could have claimed a futility defense, and then second establishing through evidence that the defense does not apply. This argument misunderstands the Defendant's burden at summary judgment.

Further, Beckwith runs into a familiar problem with evidence. He, once again, produced no evidence whatever that the defendants refused to perform their duties under the agreement. Contrariwise, as explained at length above, the defendants produced voluminous evidence showing their performance under the agreement. Accordingly, the only evidence before the Court shows that the defendants did not repudiate the agreement, so futility did not excuse Beckwith from making payments.

### 6. *Beckwith's Other Arguments*

Throughout his response, Beckwith purports to parry arguments the defendants advance. But on a great number of occasions, the defendants did not advance the argument Beckwith responds to. Because the remaining portions of

21

Beckwith's brief are responses to arguments that the defendants did not make, the Court will not address them.

To sum it up, the evidence before the Court shows that the defendants did not breach the agreement's terms as alleged by Beckwith. Therefore, Beckwith cannot maintain an Alabama breach of contract action. *See Shaffer*, 29 So. 3d at 880. The defendants are thus due judgment as a matter of law on Beckwith's breach of contract claims.

## II.   Beckwith's RESPA claims fail because the defendants complied with the Act's requirements.

Beckwith's second claim alleges that the defendants violated requirements of the Real Estate Settlement Procedures Act. 12 U.S.C. § 2601 *et seq*. The RESPA claim is simple. Beckwith contends that "Defendant [*sic*] violated the Real Estate Settlement Procedures Act (REPA) [*sic*] by failing to acknowledge or respond to Beckwith's Qualified Written Request (QWR) and notice of error within in [*sic*] the time provided by federal law." (Doc. 45 at ¶ 39). In the next paragraph, Beckwith alleges that he sent the defendants three QWRs. *Id.* at ¶ 40. The defendants contend that they never received two of the three. (Doc. 47 at 18-19). The Court will first resolve the dispute about the two contested QWRs, then it will proceed to the merits of Beckwith's claim.

### A.   The defendants never received the two contested QWRs.

Beckwith attached electronic copies of three alleged QWRs to the second amended complaint. (Docs. 45-1, 45-2, 45-3, 45-4, 45-5). Puzzlingly, Beckwith did not attach the letters dated October 25 and December 5, 2019, to either the original or first amended complaints. *See* (Docs. 1-1, 16). The defendants contend they never received those two letters. In their motion, the defendants produce evidence showing that they never received the two letters in question. (Doc. 47 at 18-19; Doc. 48-27 at ¶¶ 6-8). Most compellingly, the defendants point the Court to Beckwith's deposition testimony, where he admits he had no knowledge of the two letters in question, and indeed had never seen them. (Doc. 48-25 at 139-40).

In his response, Beckwith produced no evidence that he sent the two disputed letters to the defendants. Despite a conclusory statement in his response contending that he "has proven that he properly sent Defendant [*sic*] several three (3) Qualified Written Requests and that they [*sic*] received no timely response from Defendant [*sic*] to any of them", (Doc. 60 at 23), Beckwith has provided no proof that he sent the defendants the two letters. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289. Contrary to his protests, proof of delivery is possible as shown by Beckwith's additional attachments to the second amended complaint. Along with the three QWRs, Beckwith attached evidence showing that the third letter was delivered to

the defendants. (Doc. 45-6). Between the operative complaint and the response, he has failed to produce similar evidence for the two letters in dispute.

Like his argument section about the breach of contract issue, Beckwith raises several purported responses to arguments advanced by the defendants in their motion. But, as above, the defendants did not make those arguments in their motion. Because the remaining arguments made by Beckwith are responses to arguments that the defendants have not made, the Court will not address them.

Accordingly, the only evidence before the Court—the evidence presented by the defendants—shows that the defendants did not receive the correspondence dated October 25 and December 5, 2019. Thus, any claims based on those two letters fail as a matter of law.

**B.    The defendants complied with RESPA's requirements in responding to the correspondence dated February 29, 2020.**

Beckwith's only cognizable RESPA claim in his complaint is that the defendants failed to acknowledge or respond to his QWR and notice of error within RESPA's time limits. (Doc. 45 at ¶ 39). The parties do not dispute that the correspondence dated February 29 are a valid QWR and notice of error under RESPA.

RESPA provides detailed regulations governing the time limits that servicers must follow when responding to QWRs and notices of error. First, a servicer must provide "the borrower a written response acknowledging receipt of the notice of

24

error" within five days, excluding holidays and weekends. 12 C.F.R. § 1024.35(d). Because the correspondence in this case alleged errors under 12 C.F.R. §§ 1024.35(b)(5) and (b)(11), (Doc. 48-20), the time limits under 12 C.F.R. § 1024.35(e)(3)(i)(C) applied to the defendants. Specifically, the regulations required the defendants to comply with RESPA's response provision "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error." 12 C.F.R. § 1024.35(e)(3)(i)(C). But the fun doesn't stop there. Because (e)(3)(i)(C)'s time limits applied here, RESPA provided that the defendants "may extend the time period for responding by an additional 15 days" excluding holidays and weekends so long as the defendants notified Beckwith "before the end of the 30-day period . . . of the extension and the reasons for the extension in writing." 12 C.F.R. § 1024.35(e)(3)(ii).

The defendants produced evidence showing that they complied with all time requirements under RESPA. First, Caliber sent the required acknowledgment letter to Beckwith on February 21, 2020, within the five-day deadline. (Docs. 48-1 at ¶ 26; 48-21). Next, on February 28, 2020, the defendants responded in part to Beckwith's requests by providing the loan owner's information. (Docs. 48-1 at ¶ 27; 48-22). On April 2, 2020, within the 30-day period, the defendants requested the fifteen-day extension under (e)(3)(ii) in writing. (Docs. 48-1 at ¶ 28; 48-23). And finally, on April 8, 2020, the defendants provided Beckwith with a final response. (Docs. 48-1

at ¶ 29; 48-24). Most importantly, to further establish that they provided the required correspondence within the regulatory time limits, the defendants pointed to Beckwith's deposition where he admitted that he timely received the correspondence. (Doc. 48-25 at 143, 144, 145-46, 147).

Beckwith, on the contrary, produced no evidence whatever showing that the defendants failed to comply with RESPA's timing requirements. Instead, Beckwith repeats legal conclusions from his complaint. For example, Beckwith argues that "the Defendants failed to timely and properly respond as required by the federal law, and it has no legal excuse for its failures" without explaining how their response was inadequate or citing any evidence showing his allegation is true. As explained at length above, Beckwith cannot defeat summary judgment with mere allegations. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289. Accordingly, the only evidence before the Court shows that the defendants satisfied all timing requirements under RESPA. Therefore, because the defendants complied with the Act's time limitations, Beckwith's RESPA claim fails as a matter of law.

### C.   Beckwith's claim that the defendants' RESPA response was substantively inadequate falls flat.

Finally, Beckwith argues in his response that the defendants' RESPA response was substantively deficient. (Doc. 60 at 23). This argument fails for two familiar reasons. First, this is a novel argument of liability not raised in the pleadings. In his complaint, Beckwith does not claim that the defendants' RESPA response was

substantively inadequate, but only that the defendants failed to timely acknowledge or respond to his QWRs and notice of error. (Doc. 45 at 12-14). Because a party cannot raise a novel claim of liability at summary judgment, Beckwith's substantive deficiency argument is barred. *See Gilmour*, 381 F.3d at 1315.

Second, Beckwith produces no evidence showing that the RESPA response was inadequate under the Act's provisions. Beckwith's argument consists entirely of two conclusory statements that the defendants failed to properly respond to his requests. (Doc. 60 at 23). But these mere allegations—without any evidence supporting them—are insufficient to create a dispute of material fact. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289. Further, the Court notes that Beckwith fails to articulate how the RESPA response was inadequate. That is, Beckwith does not explain how the RESPA response failed to comply with the Act's provisions; instead, he merely alleges that the RESPA response was generally improper.

Because Beckwith's substantive inadequacy argument is barred as a novel claim on summary judgment, and because the argument is a mere allegation and unsupported by citations to evidence, it fails as a matter of law.

### D. Beckwith did not suffer RESPA damages.

Even if Beckwith had proven a RESPA violation his claim would fail because he did not suffer any recoverable damages under RESPA. "[D]amages are an essential element in . . . a RESPA claim." *Renfroe v. Nationstar Mortg., LLC*, 822

F.3d 1241, 1246 (11th Cir. 2016) (citing *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013); *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012)). The damages available under RESPA are narrow. A servicer is liable for actual damages resulting from the RESPA violation and for statutory damages up to $2,000 when there is a pattern or practice of noncompliance. 12 U.S.C. 2605(f)(1); 12 C.F.R. 1024.21(f)(1)(i). The later are not relevant here because Beckwith did not allege a pattern or practice of RESPA noncompliance in his complaint.

The Act's language makes clear that actual damages are "a result of" the servicer's alleged violation. 12 U.S.C. § 2605(f)(1)(A). "This language suggests there must be a 'causal link' between the alleged violation and the damages." *Renfroe*, 822 F.3d at 1246 (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc)). In his complaint, Beckwith alleges that the defendants' purported RESPA violations: prevented him from curing his default resulting in the foreclosure; forced him to hire an attorney and pay attorney's fees; resulted in him accruing court costs in filing legal actions; made him lose clients and thus decreased his income; negatively impacted his reputation; and caused extreme mental anguish. (Doc. 45 at ¶ 44).

Beckwith's claim for RESPA damages fails for two reasons. First, Beckwith again appears to argue that the defendants were required at summary judgment to

affirmatively disprove any and all potential legal theories he could possibly raise at trial. (Doc. 60 at 24). Specifically, Beckwith argues that "[t]he defendants have not attempted to define the reach of 'actual damages' under RESPA, and without such a definition they cannot meet their burden of showing the plaintiff cannot prove any such damages." *Id.* As explained above, Beckwith must affirmatively prove his own case at summary judgment.

Second, the evidence before the Court shows that Beckwith did not suffer any RESPA damages. Beckwith does not cite a single piece of evidence showing that the defendants' alleged RESPA violations resulted in damages. Instead, he repeats mere allegations that the defendants' alleged conduct resulted in damages. But, again, a party must direct the Court to evidence to show a dispute of material fact and defeat summary judgment. *See Walt Disney Parks & Resorts US*, 900 F.3d at 1289. On the other hand, the defendants did produce evidence showing that Beckwith suffered no damages. Despite Beckwith's assertion that the defendants "did not ask the plaintiff in his deposition about her [*sic*] RESPA damages", (Doc. 60 at 24), the defendants expressly and explicitly questioned him at length about RESPA damages at his deposition. (Doc. 48-25 at 148-151). And Beckwith admitted that he suffered no RESPA damages. *Id.* That is, Beckwith's own testimony is that he did not suffer any RESPA damages, and he has produced no evidence at summary judgment showing RESPA damages.

Thus, the only evidence before the Court affirmatively shows that Beckwith did not suffer any RESPA damages. Accordingly, Beckwith's RESPA claim fails as a matter of law.

## <u>CONCLUSION</u>

For these reasons, the defendants' motion for summary judgment, (Doc. 46), is **GRANTED**. Beckwith's claims are hereby **DISMISSED WITH PREJUDICE**. A separate final order will be entered contemporaneously with this memorandum opinion.

**DONE** and **ORDERED** this May 23, 2022.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE